Good morning, Your Honors. Jay Nelson on behalf of Aldridge Currie. I'll do my best to watch my own time and I'll try to reserve two minutes for rebuttal. Okay. Your Honors, under any standard, this case involves an egregious batson violation by a serial batson violator. But I want to start with the standard of review because I think the case is particularly easy on de novo review. We've identified three reasons why de novo review applies in this case. Number one is the state court's improper legal framework. Number two is the state court's declination to adjudicate Step 3 on the merits and a minimum particular aspects of Step 3 on the merits. You know, I'm having trouble hearing you. I'm not quite sure whether it's the – Could you repeat with your Step 1, please, and Step 2 and Step 3 a little bit slower? Sure. Is this better, Your Honor? Closer to the microphone? Closer to the microphone. I mean, I think I'm getting old and I'm having trouble with my hearing, but your words are not entirely distinct. It's partly a problem with the PA system, but do your best. I've been told I speak quickly, too, Your Honor. Okay. So we have identified three reasons why de novo review applies. Number one is the state court's application of an improper legal framework. Number two is the state court's declination to adjudicate bats in Step 3 on the merits or at a minimum certain aspects of Step 3 on the merits. And number three is the state court's unreasonable determinations of fact. And I think the unreasonable facts tie in closely, of course, with the substance of the claim, and so I'd like to address those in more detail later if I could. Let me understand the argument you were just making. I thought you were just telling us that we do this de novo. Is that right? That's correct, Your Honor. But the last one, which is unreasonable determination of the fact, that's the standard under AEDPA. Well, under, for example, Maxwell v. Roe, Your Honor, when we have unreasonable determinations of fact, this Court has held that there's essentially no decision to review, no factual determinations to review, so you conduct a de novo review. That just collapses into itself. In a sense, it does, Your Honor. I agree with that. And that's why — So that one's not important, but because we're going to do the same thing. I agree, Your Honor. The question is whether either of the other ones make a difference. Sure. So I think the cleanest and easiest one, Your Honor, is the improper legal framework. Johnson v. California, Miller L2, Williams v. Runnels, Johnson v. Finn all say that we do not do speculation under Batson, particularly Batson Step 1. And unfortunately, the California State courts persist in permitting trial judges to engage in speculation, and that's precisely what happened in this case. Well, that's a hard one, actually, for me. The trial judge did engage in speculation. But the trial judge, I think it was Judge Kennedy, did speculation in trying to figure out whether there had been a prima facie case. Right. And I don't think at the stage of deciding whether there's a prima facie case, the prosecutor or whoever is being challenged is required to state his or her reasons. Am I right on that? True. Yes, Your Honor. Well, then, if the prosecutor — I'll say prosecutor, although it's not necessarily usually is — if the prosecutor is not entitled to — not required to state his reasons, I think the trial judge, in figuring out whether there's a prima facie case, has no choice but to engage in speculation. To a certain extent, I agree, Your Honor. And Williams v. Runnels, I believe, wrestled with this issue specifically. And it wrestled with the sort of tension that we have between the Supreme Court telling us that we have to review the totality of the circumstances. And so in that sense, Your Honor is correct. We have — it's not necessarily impermissible to think about possible reasons why the strike might have occurred. But what Williams held and what Johnson v. Finn reaffirmed is that that cannot be the sole reason you don't find a prima facie case. And that's precisely what happened in this case. The trial judge said, the reason I'm denying a prima facie case is because I'm imagining a reason why the strike could have been permissible, and that's the sole reason why the California Court of Appeal affirmed, and that is explicitly prescribed by Williams v. Runnels and Johnson v. Finn, not to mention Johnson v. California, of course, at the Supreme Court. Kagan. You don't read the California Court of Appeal as having gone on to a third level — a third stage analysis as well? I take the California Court of Appeal at its word, Your Honor. They said we do not take the trial judge's inquiry into Step 3 as transforming this case into a Stage 3 case. Right. But then they said an essentially even if. They said, well — and then this gets us into the question of what's dicta versus what's an adjudication on the merits versus what's an alternative holding. And I can't deny that there's some awkward phrasing in the State Court's Step 3 language which creates a little bit of ambiguity. But our position — and I'd be curious to hear what my colleague from the Attorney General's office view is, because I — It's ambiguous about the State Court's Court of Appeal decision that in Step 3 there was a qualitative difference between drug use and drug arrest. I'm sorry, Your Honor. Could you please repeat that? What is ambiguous about the State Court — Court of Appeal's determination that there was a qualitative difference and therefore a race-neutral basis between drug arrest and drug use? Well, what I was saying was ambiguous, Your Honor, was whether they adjudicated — well, I don't think it's ambiguous, but I think — Not ambiguous. So I have not grasped your point. The point, Your Honor, was that in response to Judge Berzon's question, our view is that they did not adjudicate Step 3 on the merits, and therefore this Court reviews Step 3 — And what I just recited was not in the Court of Appeal's decision? They did discuss drug arrest and drug use. That's true. Then why do you say they didn't discuss — they didn't determine it? Well, I was — what I'm saying is that I don't believe that what they said constitutes an adjudication on the merits for purposes of 2254. Oh, okay. Because what they said — what they first said was, we don't believe this is a Stage 3 case. And then it proceeded to discuss Stage 3, but the question is whether that's an alternative holding such that it's an adjudication on the merits. Well, it's the way I would write an alternative holding. Let's put it that way, i.e., even if. Okay. Understood, Your Honor. How else do you write it? Well, you say — there are different ways you could say it, but I understand your point, Your Honor. But that's why I started with the improper legal framework, because when we have the improper legal framework at Step 1, what Paulino 2 tells us is that that gets us de novo review of the entire claim. I'm not understanding, though. If there was a ruling as to Stage 3, then don't we just go to Stage 3, forget about Stage 1, and determine whether it was reasonable or not? Hernandez certainly allows that, Your Honor. Hernandez certainly contemplates that, the Supreme Court's decision in Hernandez. There's a short argument. So would you please get past the framework and let's talk about what happened Sure. Yes, please. I want to — yes, I'm running very low on time. I want to basically — with the time I have left, we should discuss the inconsistency rationale. This was David Brown's big rationale. It was his pretextual rationale in Curry 2, which the trial court rejected. He returned to it again as his excuse for belated questioning after he had already passed on juror Jones for cause. It was the first explanation out of his mouth when he started reciting his Step 3 explanations. This was his go-to explanation. This is what he was really hanging his hat on. And it is demonstrably false. Ms. Jones was never inconsistent in her questionnaires. She repeatedly and clearly explained that her relatives were subject to uncharged arrests. Well, in her questionnaire, in the first question where she says no, she even specifies. She writes out in her own handwriting.  I believe those notations are from the trial judge, Your Honor. Those appear throughout the questionnaires where the trial judge is making notations about his observations from the supplemental questionnaire, and then he's putting shorthand on the form. The handwriting on the form is not Ms. Brown's. That's not — my understanding is that's the trial judge. It notes this distinction. What's that? But it does note this distinction. So the judge was aware of it as well. Well, the judge noted that she had — that she disclosed the arrests, friends and family members, something like that. But David Brown says — I'll just finish answering this really quickly before I reserve the rest of my time. David Brown says she was inconsistent in her questionnaires. Defense counsel said no, no, no. She was not inconsistent. Even if she was inconsistent, Your Honors, five other jurors we've identified in our briefs, non-black seated jurors made the exact inconsistent answer that David Brown accused Ms. Jones of, and he seated them. He never questioned them about it. He put them on the jury because they weren't black. Let me ask you a question. Suppose the trial judge found that there was a race-neutral reason for using a peremptory challenge against Ms. Jones in that her brother had been arrested for drugs, whereas a white person had abused drugs. There was a qualitative difference. Let's suppose that the questionnaire — I agree with you. The questionnaire was an improper explanation. Let's suppose further that the failure to read the charge or know the charge was another improper question. If we've got two improper reasons and one proper reason, under AEDPA, aren't we required to find that there's a reasonable basis for the fact-finding? No, Your Honor, because the standard is whether the strike is motivated in substantial part by racial animus, and that's precisely what we have here. And Kessler v. Camber discusses whether we have two— That's a slightly different question, isn't it? The question whether there were some reasons that didn't stand up and some that did might lead you to conclude that overall it was at least partially motivated by race, but it might lead you to conclude that he just made a mistake as to those two and it really wasn't motivated. In other words, from the fact that some of them stood up and others didn't, you don't necessarily get to the point that it was substantially motivated by race, do you? You could, and the fact that the courts didn't seem to – the State courts didn't deal with the – with the mistakes because they didn't notice the mistakes might be of some significance. They ignored them. They ignored wholly at least two of the four explanations. And quite frankly, I'm actually – I prefer to refer to only three explanations because the fourth explanation is actually the trial court's explanation. And my argument is that that has no place in a proper Batson analysis. The trial court came up with it. David Brown said – Which one is that? That's the drug arrest, which the trial court unreasonably and inaccurately referred to as drug prosecutions, which was not true. I believe at least five times the trial court said they were prosecuted – they were very close relations prosecuted for drugs. One, we have no information that they were close relations at all. We know the nature of the relationship, but we don't know if they were close or not. One was a brother and one was a cousin. Right. And a number of others, white, nonblack, seated jurors, had extraordinary experience with drugs. For example, juror number 35. We can't conclude this discussion without the discussion of juror number 35. Juror number 35 personally used so much cocaine, methamphetamine, pot, and alcohol that he gave himself grand mal seizures and was unable to drive for six years, not to mention I think he said he had at least two DUIs. Now, we're saying that drug use is – drug use by somebody close to you is a race-neutral basis to kick somebody off the jury. All we have here, we have – we have a – we have juror Jones' brother getting arrested for drugs and some other drug use in her childhood with her family. Juror number 35 gets on the jury without a question, as far as I'm – as far as I understand, despite the fact that he gave himself seizures because essentially with all due respect to the gentleman, he was basically a junkie for some period of his life. And so if the – if the argument is – I don't know whether this is a meaningful distinction for our purposes, but of drug use, arrests, and so on, with respect to relatives, and with this other guy, it's his own drug use. Now, whether that's a meaningful difference, I don't know. But that is a distinction. Your Honor, it certainly would seem to me that personal – one's personal use of drug – of drugs is closer to home than one's brother, particularly when we have no information, because David Brown never inquired, about the actual nature of the relationship with the brother. Gotcha. Okay. Let's hear from the other side. We've taken you two minutes over, but we'll put two minutes back on the clock. I appreciate that, Your Honor. Thank you. May it please the Court, I'm Alan Crown. I represent the State of California in this proceeding. And as we've said in our briefs, we urge the Court to apply the doubly deferential standard of review to this case. You know, this – this is a really troublesome case to me. We've got a prosecutor who habitually violates Batson. The track record of this particular prosecutor is all too clear. And here he is again challenging the one African-American person who sits on the panel. Ordinarily, of course, one swallow is not enough to make a spring. One challenge is not enough to give us a successful Batson challenge. On the other hand, what do I do with the background of this particular prosecutor who has a clearer record than I have ever seen with respect to a prosecutor who is a habitual violator of Batson? He does have that past history. And – And including in this very case. And in this very case. Twice previously in this very case. Twice. With this very defendant, yes. At the first trial and when the – in the retrial, when the first jury, the attempt to select a jury resulted in the trial judge granting the Batson motion. Was it the same judge? Was it Kennedy both times? I believe it was, yes. It was also – I mean, this is sort of curious, but he went about it, I mean, his general – in the same way. That is, he let the whole jury selection occur. And after there was a seated jury in both instances, he – he knocked off the minority jury. Is that correct? I believe that's correct. So there – I mean, I don't know quite what that tactic means. Maybe it means he's hoping that the other side will knock them off first. But in any event, he's proceeding in at least an unusual fashion. And he's – and what he's doing as a result is he's making it very difficult for the judge because he's got to start all over again if he finds a Batson violation, which is what happened the first time. Yes. I believe you're correct. He is making it difficult for the trial judge. And do you agree that the consequence of sustaining the Batson challenge by the judge this last time around would be that you start all over again? Was that what was going to happen? Oh, yes. If the trial judge had granted the Batson motion, then they would have had to start the jury selection process over. Because the first time they tried to come up with another solution and didn't. And did not. No. So he knew that if he did this, it was going to start all over again. Whereas if he knocked her off earlier, maybe something else would have happened. Yes. And what you've got is you've got a trial judge who is conscientious enough that if he's not convinced that this was no prima facie case, he would have gone through and done another jury selection. So in terms of – I mean, do you agree that we should just forget about the prima facie case issue and just go to the Stage 3 question? No, Your Honor. Well, if we don't, then it seems to me that there was a legal error, both in the district court and in the court of appeal on the prima facie case. And we have to redo the prima facie case where it's much more complicated. But the court of appeals did, as an alternative holding, do the Stage 3, no? That's correct. Yes, the court of appeal did. The court of appeal found both that there was no prima facie – let me say that differently. The state court of appeal found that there was no error in the trial judge denying the Batson motion on the basis that there was no prima facie case and also went ahead with the third stage analysis. If you're going to stick on that issue, if you want us to decide it, then why wasn't there a direct inconsistency with Johnson v. Finn and others of our cases that say at the prima facie level, imagining, you know, even reasonable reasons is not a pertinent consideration? I mean, you can come up with a lot of reasons why that has to be true. But the State law seems directly to the contrary on that. And Judge Kennedy, you know, who is a very good judge, specifically said, I'm bound by the State cases that say it's supposed to be doing this. So I'm doing it. But the State and Federal cases seem at loggerheads on this question, aren't they? I don't think they are, Your Honor. I think that the situation is that at the prima facie stage, it's up to the trial judge to make that determination. Now, here you've got a prosecutor who has had problems explaining his jury challenges in the past. He's had problems explaining. He's explained them, and he's been wrong. He had a different concept of bias than I think the courts have. But that's the problem, right? I mean, if the trial judge is supplying reasons that somebody could have used to deny this person, but those aren't the reasons. What is the pertinence of them at the prima facie case or anywhere else? I mean, and more of them. Well, go ahead. Well, let me give you a hypothetical. Let's say that the trial judge is watching the jury selection and is thinking about, you know, if I were the defense attorney, if I were the prosecutor, will I want this juror on my panel? And he's got a prospective juror up there. And the trial judge is thinking to himself, if I were the prosecutor, I would never, ever, no matter who the prosecutor is, I would never want this person because of this person's demeanor, because of the overall situation. Yeah, but Ms. Jones does not appear to be such a person. She's well educated. She answers the questions very clearly. She's quite unambiguous in saying that these other things would not affect her judgment. I mean, I understand that if you have a notion that a black person is more likely to acquit, you don't want her there. But if you take that out of the case, she's a pretty good juror. On paper, she is. But so. But that's all the judge had. Well, no. The trial judge has much more. The trial judge is looking at the person and looking at the person's demeanor, not just what she says, but how she says it. But why is it pertinent what the trial judge thinks he would do if he was the prosecutor? Why is that pertinent? Well, it's important if the trial judge is thinking, no prosecutor would allow this person to be on the jury. But that's not what he said. He said this, and that's not the standard he was applying. Maybe that standard would fly. But this standard was, were there reasonable reasons for excluding her? And that can't be. There are reasonable reasons for excluding almost anybody. You're looking for reasonable reasons. So that's really, at that level, you're never going to have a prima facie case. And if you, and if the position is that because of this prosecutor's history, you're never, you're always going to have a prima facie case just because it's him. Well, it's not only that. It's that this, it's that plus she was the only black juror, plus she was the only black juror. She was, as Judge Fletcher says, on paper and as far as one can tell from the transcript at the hearing, well-spoken, thoughtful, gave all the right answers as to what, whether she would, how she would consider the case. There was no red flags that one could see in terms of somebody who was just unacceptable. She just wasn't there. The fact that there might have been reasonable reasons for excluding her, which may be so, is a different inquiry. Well, we've, I don't want to concede the issue of the prima facie case because I think that the judge- And you don't think that in that Johnson v. Finn says you don't do that? You just don't, the trial judge, it's not part of a prima facie case that the trial judge can come up with reasonable reasons. The trial judge has to. I mean, he hasn't heard from the prosecutor at that point. Why does he have to? Well, he has to. The inference, the Batson three-stage process was modeled on McDonnell-Douglas, which is the one that's applicable in Title VII. There, all you have to show for a prima facie case is you're a minority, you're rejected you, period, the end, nothing else. It's supposed to be minimal. And if it is supposed to be that minimal, then that's fine. I mean, what we have here, and I'll move on because I don't think I'm going to convince you this morning if I haven't done it in the briefs, the State Court of Appeal also, as an alternative holding, conducted the third-stage analysis and reached the result that the appellant had failed to show. With respect to the third stage, this is an unusual third stage in that the trial judge, in announcing why he thought there had been no prima facie case shown, handed it to the prosecutor on a platter, reasons that he, the trial judge, would accept. So the prosecutor, being no dummy, says, yeah, what you said, Judge, I agree with that, those are my reasons, and then he adds a few that are really elaborations on the very same reasons the judge has already suggested to him would be acceptable. That bothers me, I have to say. It doesn't mean that the prosecutor's reasons weren't the same. He did, you know, restate them. But every other time when the prosecutor had given reasons, he had given these cockamamie reasons, I can't tell whether the person's black, blah, blah, blah, all these reasons that we have consistently rejected, well, the trial judge finally showed him the answer to the test, and he says, yeah, yeah, that's my answer. I have to say that whether or not prima facie case was shown, I find it deeply distressing that when the trial judge says there's no prima facie case, the trial judge says out in court, here is why there's no prima facie cases. Here are legitimate reasons why the prosecutor could have done that. And then he asked the prosecutor, what were your reasons? And he says, the ones you gave me, Judge. Terrific. But also, aside from that, the other reasons, I think there were some that were somewhat different from what the judge said. I mean, one was this notion of an inconsistency. Notably, he also found an inconsistency at the time of the first trial, which Judge Kennedy said wasn't really an inconsistency. And this one wasn't an inconsistency either, right? He said it was inconsistent with regard to whether anybody in her family was a defendant, and that was clearly wrong. Do you agree with that? I'm sorry? He said there was an inconsistency between the two questionnaires, because he said first that nobody in her family had been a defendant and then said that there were people who were arrested. Was there an inconsistency? Between the question of prosecution and arrest? Yes. There may be. These questionnaires have interesting questions, but, you know, they get interesting answers. Well, exactly, and to seize on that, especially when many other people did the same thing, seems like you're looking for something. That's number one. Do you disagree with that? Well, of course the prosecutor is looking for something in the sense that he's trying to give his reasons. Well, he's looking for an excuse rather than a real reason, a pretext, i.e., a reason that nobody would really stand on.  Well, let's go after the supposed inconsistency in the questionnaire to answer to question 10. The question is, have you, a family or household member or close friend, been a victim, witness, or defendant in a criminal matter? She checks no. Later, question 21, have you, any member of your family, any close friend ever been arrested? Yes. If yes, please describe. Friends, family members, parenthesis, arrested for drug-related issues, and then sub-questions, were charges filed? No. Was there a trial? No. Do you feel the person was treated fairly? Yes. Well, if the person, if no charges were filed and there was no trial, there was only an arrest, well, they were not defendants. I mean, this is perfectly consistent. In fact, if this were a lawyer answering, I would say, yes, you understand the law pretty well. If the lawyer had answered differently, I would have said, you dummy, you don't understand what a defendant is. So I don't see the inconsistency. Well. But that's the assertive inconsistency, am I right? Yes. Okay. But I don't see it. Well, the thing is that the jury selection happens in the courtroom, and if the prosecutor thought there was an inconsistency in the questionnaire. Did he ask her about it? Pardon me? Did he ask her about the inconsistency? He re-questioned her the second time. Did he ask her about it? No. No. All right. What about the other? Then the other thing he says is that she, when asked if she would presume innocence, she said, yes, I don't know anything about the case. And he says that's an inconsistency because she was actually read the charges. First of all, was she read the charges? I thought before that point, I thought she wasn't actually. I'm sorry. Was she in fact read the charges before they filled out the second questionnaire? I think not in this case. I think not. So he's wrong about that. And then he says, I'm sorry, what? But it would not be unreasonable for the prosecutor to be mistaken about whether she had been read the charges. But then it seems eminently reasonable, careful, and thoughtful to say I don't know what he was accused of, meaning I don't know what he did. I mean, even if she was read the charges, what she read, he's accused of murder, but not he did this and he did that and he did that. And you would try to find out whether she had a preconception about the case, and she was trying to say she didn't. There was — so that was also a made-up thing. It was just not there. Well, I don't know that it was made up. I mean, it's — It was wrong. It may have been mistaken. Twice wrong, because, in fact, she wasn't read the charges and it wasn't about the charges. He may have been mistaken about her not being read the charges, yes. Right, but he couldn't have been mistaken about the fact that even if she were read the charges, she still wouldn't know what he was accused of. Well, murder, robbery, and — And — And being a felon in possession of a firearm. You know, where I end up with is the reasons that he adds are wrong. The only reasons that he gives that are any good are the reasons the judge said, but here are reasons why you could legitimately have struck. So what am I left with? I'm left with a prosecutor who says, yes, judge, and now here are some additional reasons that turn out to be factually wrong. And we have his past history. How can I conclude anything other than this is a race-based challenge? Well, you may conclude that, but the State Court of Appeal did not. Well, I understand that. Right. And — The only question is, how wrong do I think the State Court of Appeal was? Well, if it's only a matter that reasonable minds can differ, then this Court should deny the petition. Well, I understand that, too. And that's what we are asking this Court to do. And what do we do with Justice Liu, who is now very outspoken, and consistently so, in objecting to the California court, particularly the California Supreme Court, refusing to enforce Batson? Is that at all relevant here? I think not, Your Honor. I think that, you know, that's his opinion, and it's not the decision of a court. Yeah. But what do I do with — we see a lot of Batson cases, particularly actually coming out of Alameda and Contra Costa County. I mean, there's some smoke over there, at least in the past. I'm not speaking to today. I've handled several cases of that nature, and so I agree. There are challenges of that nature. Yeah. I'm just — I have real trouble closing my eyes to what's right here in front of me. And yet that, you know, it seems to be what the Supreme Court wants to have happen, unless this is a situation where no reasonable judge could have reached the other conclusion. Okay. You have a question on the bench? I have a question. It's a judge — the trial judge found there was no prima facie case. Yes. He wasn't required to go on to step two and step three, correct? Under California decisions, he was required to go ahead and ask the prosecutor his reasons. He was. Under Wheeler. He was not required to make a ruling at stage three, but he was required to ask the prosecutor his reasons because — You've answered my question. Go ahead. I'm sorry. Because Judge Kennedy said that's my practice. He didn't say I'm required to do it. Well, but the California Supreme Court had instructed trial judges to have the prosecutor state his reasons for the record so that there would be a contemporaneous record of what his reasons were. I think a good idea, but I didn't know that. But that would be useful only in the event that — well, the idea was that it would be useful only in the event that there was a reversal on appeal, and then the case went back to the trial court to make a third-stage ruling. And that's going to be on a cold record at that point because it's going to be years later. And so if the prosecutor or the defense attorney, depending on which way the challenge was, if the attorney had stated his reasons for the record at the time of the trial, then there would be some contemporaneous record for review at that point. Am I right that — just one last thing — that the court of appeals looked at the other jurors' questionnaires with regard to the drug issue, but did not look at them with regard to the other reasons given, i.e., the — as to which my understanding is that they would have found that he didn't strike many people for exactly the same thing, that is, the supposed conflict between the arrest and the defendants and also this question about whether she knew what was — she knew what he was, quote, accused of. In other words, they didn't even look at that, as the other jurors, for that — on those issues. They just didn't do it. I don't actually know, Your Honor. I'd have to — I'd have to go back and look at the opinion in more detail to see exactly which issues they did a comparative analysis on. I know they did a comparative analysis, but I'm not sure the extent of it. And I take your point that under California law, the trial judge is expected, even when having found there's no prima facie case, to ask the prosecutor his reasons for the record. But it strikes me as bad practice, if the judge is going to ask the prosecutor his reasons, to already have stated the reasons so that the prosecutor can say, I agree, Judge. I think — I think you have a point there. And I think that, you know, that is something that perhaps the State Supreme Court should take a look at. But it's not part of the requirements for the trial judge at this point. Yeah, I know. But it somehow gives me pause, when combined with everything else, that the only thing this prosecutor really had to do was to say, Judge, the reasons you just gave are mine, and sit down. It turns out he didn't sit down. He gave a few more reasons that were wrong. Well, he had some other reasons in addition. And, of course, as you've pointed out, any good attorney would say, yes, Your Honor, those are my reasons, too. I mean, of course. But that doesn't mean they weren't his reasons. No, but that also doesn't mean he would have said them had he not been prompted by the judge. Okay. You're doing a very nice job. I'm not sure where I'm going to come out on the case, but thank you for your argument. Thank you, Your Honor. Well, we've taken the State over time. Let's put two minutes on the clock and see what happens. Thank you, Your Honor. I'd like to address the issue of proceeding to Step 3 in response to a question Your Honor asked Judge Berzon. I urge the Court to go back and relook at Paulino 2, which we cited in our briefs a number of times. I'm sorry? Paulino v. Harrison, I believe. Well, I'm calling it Paulino 2. It's when the gentleman named Paulino came back to this Court. That ended up being a Step 2 case. And what Paulino 2 said was, and Paulino 1 was the Step 1 case, and this Court sent it back. They had a hearing, took evidence regarding Steps 2 and 3. So Paulino 2 ended up being basically a Step 2 case. And what the Court said was, because the State Court applied an improper legal standard at Step 1, we're doing the remaining steps de novo. And in a footnote, by the way, we're also doing de novo because they didn't adjudicate it. Paulino 2 said because the State Court never adjudicated Steps 2 and 3 on the merits. So there's two separate and distinct reasons to apply de novo review at Step 3 because of the legal error at Step 1. That's a binding published opinion by this Court. The only reason it might make sense, and I have to look back at Paulino 2, is that it wasn't actually the true. Well, the trial judge, he did do a very summary Stage 3 in the alternative, didn't he? I mean, didn't he look at the reasons and say just sort of summarily, I'm finding they're not pretextual, and those are really the reasons? In this case, yes, Your Honor. So he did one. So he did an alternative one, and the Court of Appeals did an alternative one. Why would we just ignore them? Well, because Paulino 2 is a published opinion of this Court. It's binding under Miller v. Gamey. I mean, that's the approach Paulino 2 took. And I think, you know, to me it makes sense. I thought in that case that the Stage 2 and 3 were a Federal evidentiary hearing. Is that right? Yes. Yes, that's right, Your Honor. So how does Batson – so where does Batson come in? Where does Edwin come in then to those considerations? Well, it wouldn't. And Paulino 2 addressed that in a footnote as a separate and distinct reason to apply de novo review. But I think also it makes sense in a certain way, because if you have a court saying, well, we define no prima facie case, but we're going to say some cursory things about Steps 2 and 3, it doesn't make sense to put a lot of stock in that because you don't really know what their analysis is. And in this case itself – They're more likely to get overruled because they didn't do a good job. But that's – I just don't see how we ignore it. Okay. But even if we do this under AEDPA at Step 3, Your Honors have in our briefs and the absolutely unreasonable determinations of fact that underlie affirming David Brown's explanations for this strike. The inconsistency thing is false. It also applied to numerous other jurors. Aren't the difference between drug charge and drug use not race neutral? The difference between drug charge and drug use – Drug charge as to the brother of Bonaire person Jones and drug use by a white person. Why is that not a qualitative difference? Well, Your Honor, I think one of the things that the State Court did in its Step 3 was it kind of mushed together drugs and law enforcement contacts. And so it kind of muddied up the analysis in a way – It's the opposite. It distinguished between law enforcement contacts and drug use. Well – Is that not a qualitative difference? Those are – yes. Those are distinct reasons. The law enforcement contacts was the explanation provided by the trial court, which I'm asking this Court to ignore because it wasn't David Brown's original thing. But it was also wrong in any case. The drug use is a separate issue. In some cases it says that the prosecuting attorney who is not totally dull-witted can't take a suggestion by a trial judge and agree with it. No. I've seen a memorandum disposition by this Court addressing the issue. I have not seen any published authority on this particular question. I think it's absolutely inconsistent with Batson to credit an explanation which is provided by the judge sua sponte under California precedent, which allows him to do that, but which is flatly irreconcilable with the Federal precedent that governs this proceeding, and then say, yes, well, let's throw our hands up and say that the prosecutor can just sign up for that. Do you agree with your learned friend that we review that under a doubly differential standard? If we're under AEDPA, that's the language that's been used, yes. But we – the Court has already identified and we have identified the numerous unreasonable determinations of fact. This is a – this is – it's clear from Kessar and other cases. We're doing this under 2255d2. It's a fact thing. These are absolutely unreasonable facts. She was not inconsistent. She was told by the judge that she didn't know anything about the case. She repeated that in her questionnaire. She repeated it to David Brown's face when he was questioning her. He never paused to ask her about it. He never expressed concern about it. He just let – he just kept questioning her about using her as a sounding board to rehabilitate pro-prosecution jurors because she was the one giving right answers. Okay. Got it. Thank you, Your Honor. Any further questions from the bench? Okay. Thank both sides for your arguments. Thank you very much. Thank you very much. The case of Curry v. Lewis submitted for decision.
judges: Fletcher, Berzon, Bea